UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY E. BRAY,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | Civil No. 08-0831-WQH(WVG)<br><br>REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. Nos. 15, 21) |

Plaintiff Larry E. Bray (hereafter "Plaintiff"), filed a Complaint For Judicial Review And Remedy On Administrative Decision Under The Social Security Act [42 U.S.C. §405(g)]. Defendant Michael J. Astrue (hereafter "Defendant"), filed an Answer to the Complaint and the administrative record (hereafter "Tr."), pertaining to this case. Plaintiff has filed a Motion for Summary Judgment. Defendant has filed an Opposition to Plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary Judgment.

The Court, having reviewed Plaintiff's Motion for Summary Judgment, Defendant's Opposition to Plaintiff's Motion for Summary Judgment, Defendant's Cross-Motion for Summary Judgment and the

administrative record filed by Defendant, hereby finds that Plaintiff is not entitled to the relief requested and therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

I

PROCEDURAL HISTORY

On July 30, 2005, Plaintiff filed an application for disability insurance benefits, alleging that he was disabled since June 20, 2004. (Tr. 99-103). The Commissioner of Social Security denied his application initially and upon reconsideration. (Tr. 87-98). On October 26, 2006, a hearing was held at which Plaintiff and his wife appeared with counsel and testified before an Administrative Law Judge (hereafter "ALJ") (Tr. 656-703). On November 6, 2006, the ALJ found that Plaintiff was not disabled given his residual functional capacity for sedentary work. (Tr. 17-23). The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review. (Tr. 5-8).

II

SUMMARY OF APPLICABLE LAW

Title II of the Social Security Act (hereinafter "Act"), as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423 (a)(1)(D). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382 (a). Both titles of the Act define "disability" as the "inability to engage in any substantial gainful activity by reason of any

2

08cv0831

medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months..." Id.  The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. Id.

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial gainful activity."  If he is, disability benefits are denied. 20 C.F. R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the "severity regulation" at issue in this case.  The severity regulation provides in relevant part:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience. §§ 404.1520(c), 416.920(c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "[c]apacities

for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" [u]se of judgment;" "[r]esponding appropriately to supervision, co-workers, and usual work situations;" and "[d]ealing with changes in a routine work setting." Id.

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his previous work, the fifth and final step of the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

III

ALJ'S FINDINGS

The ALJ made the following pertinent findings:

1. (Plaintiff) meets the insured status requirements of the Social Security Act through the date of this decision.

2. (Plaintiff) has not engaged in substantial gainful activity since February 3, 2005. He did engage in substantial gainful activity from September 20, 2004, until February 3, 2005. In that regard, (Plaintiff's) testimony and record evidence indicates that (his) work activity was both substantial and gainful, his earnings based upon successful competitive employment with no special workplace conditions. There is no record evidence of frequent absences, a period of temporary work remission, or special conditions; nor does the record support (Plaintiff's) alleged unsatisfactory performance.

3. (Plaintiff) has the following severe impairments: coronary artery disease post bypass surgery, hypertension, degenerative joint disease, status post arthroscopy and meniscectomy, and peripheral neuropathy. His alleged depression, anxiety and cognitive dysfunction are not associated with more than minimal limitations, and thus, are not severe. Further, his alleged arrhythmia is controlled and did not satisfy the durational requirements of the Act.

4. (Plaintiff) does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that (Plaintiff) has the residual functional capacity to perform sedentary work. He is able to lift and/or carry up to 10 pounds occasionally, less than 10 pounds frequently; stand and/or walk for 2 to 4 hours; sit for 6 hours; with no climbing of ladders, ropes or scaffolds and otherwise occasional postural activities; and with no concentrated exposure to extremes of temperature, vibration, or lung irritants. He exhibits mild restrictions of activities of daily living, social functioning, or concentration/persistence/pace, and no episodes of decompensation; nor do the "C" criteria of the listings apply.

The residual functional capacity found herein comports with the findings of the state agency and consultive examiners, who noted no severe mental impairments and

found (Plaintiff) able to perform at least sedentary work. The record supports the conclusions reached and reflects stable impairments, controlled with treatment and medication with regard to any continuous period of not less than 12 months. For example, the record reflects objective findings consistent with osteoarthritis and coronary artery disease. (Plaintiff) underwent bypass surgery in July 2005, reporting only three months of symptoms, and by August 2005 was walking downhill without difficulty and exhibited unremarkable examination signs. Indeed, exercise tolerance was improved. Moreover, Dr. Charlat reported that (Plaintiff) was doing well with cardiac rehabilitation... and his examinations unremarkable. Acute episodes of arrhythmia were controlled by medication, and (his) clinical status was stable and benign. Further, (Plaintiff) was alert and oriented and neuropsychiatrically intact.

In that regard, Dr. Magy, a psychologist, found no objective evidence of an organic impairment, noting instead only mild depression and merely recommending antidepressant medication and therapy; (Plaintiff) denied significant depression or anxiety. (Plaintiff) had been referred to Dr. Magy by Dr. Schim, who was uncertain as to the etiology of (Plaintiff's) complaints. (Plaintiff's) physical and neurological signs were unremarkable aside from reports of decreased sensation in the feet. (Plaintiff) reported improvement with Cymbalta and denied significant side effects.

Progress notes from (Plaintiff's) primary physician, Linda Falconio, M.D., reflect medical management of (Plaintiff's) symptoms, his condition generally stable and symptom exacerbations acute. He exhibited short-term and variable exacerbations of hypertension and low-grade depression, the former controlled with medications and the latter controlled with and without medications, (Plaintiff) was taking Cymbalta only for a short time. Dr. Falconio conceded that (Plaintiff's) cardiac impairment level was slight, but opined on February 17, 2005, that (Plaintiff) was severely limited in his functional capacity and was moderately limited on a psychiatric basis. On February 10, 2005, Dr. Falconio opined that (Plaintiff's) physical impairments allowed for medium work, but his mental impairments were markedly impairing. On May 16, 2005, Dr. Falconio conceded that (Plaintiff) could perform sedentary work in the competitive workplace, but on May 6, 2006, opined that he would miss work more than three times per month secondary to organic brain syndrome and could no longer sit, stand; and walk for a total of 8 hours per day.

> I have considered the opinions of Dr. Falconio, but accord those opinions limited weight. Indeed, those opinions are internally inconsistent and are not supported by Dr. Falconio's progress notes, reflecting generally stable and benign signs and no sustained mental status abnormalities.
>
> Dr. Rodriguez, consultive examining psychiatrist, found only minimal impairment, (Plaintiff's) complete mental status examination unremarkable aside from mild depression. Similarly, Dr. Lee, a board-certified internist, reported signs and findings consistent with sedentary work during his consultive examination. (Plaintiff) exhibited mild lumbar disc degeneration, facet joint arthritis, mild to moderate knee osteoarthritis, and normal sinus rhythm. (Plaintiff) never required nitroglycerin, his blood pressure was 140/76 and his examination was positive for grade I/VI systolic murmur, slight loss of lumbar motion with tenderness, 1+ pitting edema, and knee tenderness and crepitus, with loss of motion and instability. (Plaintiff) was neurologically intact, with a slight limp, but required no assistive device for ambulation. The state agency agreed that (Plaintiff's) mental impairments are not severe and that (Plaintiff) can perform at least sedentary work. Nor did Drs. Skyhar or Bried, (Plaintiff's) orthopedists, opine greater limitations. Indeed, strength was normal, sensation was intact, ligaments were stable, and there was no effusion following surgery.
>
> Further, Dr. Steiner, who is board-certified in internal medicine and cardiovascular disease, did not consider (Plaintiff's) cardiac status impairing to the degree alleged, but rather, opined limitations that would allow for the performance of the claimant's past work. (Plaintiff) has recovered from his July 2005 bypass surgery, which as noted by the medical expert was not incapacitating for more than three months, and Dr. Steiner noted that (Plaintiff) is on cardiac maintenance, including using the treadmill and biking. Further, the medical expert opined that (Plaintiff's) mental impairments are mild and controllable with medications, his cardiovascular status is controlled and his musculoskeletal status is controlled without narcotic pain medications. The medical expert concluded that (Plaintiff's) impairments do not meet or equal any medical listings, including the cardiac musculoskeletal, or mental listings, and in fact allow for the performance of medium work. In that regard I find (Plaintiff) more limited than did the medical expert, in light of (Plaintiff's) musculoskeletal impairments, which, combined with his cardiac impairments, limit him to work activities within the parameters identified by the state agency and consultive examiners. The medical expert noted that

> (Plaintiff's) cardiac status is stable, with no end organ damage. His arrhythmia is controlled with medication, his hypertension is controlled with medication, and he exhibits no impairments, physical or mental, that preclude the performance of successful competitive remunerative work.
>
> After considering the evidence of record, <u>the undersigned finds that (Plaintiff's) medically determinable impairments could reasonably be expected to produce the alleged symptoms,</u> but that <u>(Plaintiff's) statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.</u> I have also considered the third-party statements of record from (Plaintiff's) spouse, but accord greater weight to the objective medical evidence and statements of disinterested parties. The record reveals that (Plaintiff's) problems are generally longstanding, and did not interfere with his conceded ability to work until at least the alleged onset date. In fact, (Plaintiff) admittedly returned to work until February 2005, but argues that his physical condition cannot survive the stress of working. He was nevertheless able to travel to Hawaii during the period at issue, and activities of daily living admittedly include golfing, some yardwork, some housework, some shopping, driving, Tai Chi classes, working on the computer/internet, and cardiac maintenance such as biking and using treadmill... (Plaintiff) requires no... assistive device for ambulation... Indeed, (Plaintiff) undergoes no regular mental health treatment, his cardiovascular status is controlled, his musculoskeletal impairments are controlled without narcotic pain medications, and there is no evidence of end organ damage. (Plaintiff) is taking no antidepressant medications; he took Cymbalta only for a short time, which improved his symptoms... (Plaintiff) has recovered from his July 2005 bypass surgery which as noted by the medical expert was not incapacitating for more than three months, and both he and his wife focus on (Plaintiff's) cognitive dysfunction when arguing that he can no longer work. In that regard, objective findings are not compatible with more than minimal limitations, and as noted by the medical expert are only mildly abnormal and represent only mild depression. Further, the medical expert, who is board-certified in internal medicine and cardiovascular disease, did not consider (Plaintiff's) cardiac status impairing to the degree alleged, but rather, opined limitations that would allow for the performance of (Plaintiff's) past work... (Plaintiff) is neuropsychiatrically intact and exhibits no impairments, physical or mental, that would reasonably preclude the performance of successful competitive remunerative work.

>    7. (Plaintiff) is capable of performing his past relevant work as a claims examiner or sales manager, although not as a claims adjuster. So opined the vocational expert in response to a hypothetical question assuming the residual functioning capacity found herein, and I concur and so find. Either as actually or generally performed, those jobs do not require the performance of work-related activities precluded by (Plaintiff's) residual functional capacity.
>
>    8. (Plaintiff) has not been under a "disability," as defined in the Social Security Act, from July 23, 2004 through the date of this decision.

(Tr. 19-23)(citations omitted)(emphasis in original).

## IV

## STANDARD OF REVIEW

A district court may only disturb the Commissioner's final decision "if it is based on legal error or if the fact findings are not supported by substantial evidence." Sprague v. Bowen, 812 F.2d 1226, 1229 (9th Cir. 1987); see Villa v. Heckler, 797 F.2d 794, 796 (9th Cir. 1986). The court cannot affirm the Commissioner's final decision simply by isolating a certain amount of supporting evidence. Rather, the court must examine the administrative record as a whole. Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). Yet, the Commissioner's findings are not subject to reversal because substantial evidence exists in the record to support a different conclusion. See, e.g., Mullen v. Brown, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993); see Thompson v. Schweiker, 665 F.2d 936, 939 (9th Cir. 1982). The Commissioner's decision must be set aside, even if supported by substantial evidence, if improper legal

standards were applied in reaching that decision. See, e.g., Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).

## V

## THE ALJ DID NOT ERR IN NOT MENTIONING PLAINTIFF'S WIFE'S TESTIMONY

Plaintiff argues that the ALJ erred by not addressing Plaintiff's wife's testimony given at the administrative hearing. Defendant contends that Plaintiff's assertion is without merit because the information provided in Plaintiff's wife's testimony did not differ significantly from the information provided in her written statement, which the ALJ addressed.

"Although eyewitnesses have to rely on some extent on communications with the claimant in ascertaining whether (h)e is disabled or malingering," the Ninth Circuit Court of Appeals has held that "family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to (his) condition." Dodrill v. Shalala, 12 F.3d 915, 918-919 (9th Cir. 1993); Sprague, 812 F.2d at 1232.

Social Security rulings require that the ALJ consider lay witness testimony in certain cases.

> Social Security Ruling 88-13 states that where a claimant alleges pain or other symptoms that are *not supported by medical evidence in the file*, the adjudicator *shall* obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to... third parties who would be likely to have such knowledge... The ruling requires the ALJ to give 'full consideration' to such evidence. Having been directed to consider the testimony of lay witnesses in determining a claimant's disability, the ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony he rejects.

Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)(emphasis in original), citing Dodrill, 12 F.3d at 919.

One reason for which an ALJ may discount lay witness testimony is that it conflicts with medical evidence. <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001), citing <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984).

1. <u>Plaintiff's Wife's Statement</u>

Plaintiff's wife's statement lists Plaintiff's activities and her observations of Plaintiff's limitations. She states that Plaintiff engages in cardiac rehabilitation three times per week, attends Tai Chi classes two times per week, plays golf two times per month, might complete household errands, might make the bed and takes out the garbage. (Tr. 132-136). Additionally, she states that Plaintiff attends church two to three times per week and acts as a greeter on two Sundays each month. (Tr. 136). However, she also states that Plaintiff has problems starting and completing tasks, delays paying bills, has poor decision making ability, poor money spending control, needs reminders regarding personal hygiene and taking his medications, does not have energy, has lost upper body strength, can not perform yardwork or heavy work because his legs hurt all the time and has numbness in his feet, does not lift greater than 20 pounds, can not squat or bend, can not walk more than four to five blocks and can not climb stairs. (Tr. 134-139).

Further, Plaintiff's wife indicated that Plaintiff can not focus, prioritize or organize tasks, can not problem solve, requires sleeping pills to sleep, is easily agitated, short tempered and nervous, and has problems with memory and concentration. (Tr. 133, 137-138).

08cv0831

### 2. Plaintiff's Wife's Testimony

At the hearing, Plaintiff's wife testified about Plaintiff's activities and her observations of his limitations. She stated that she does 90% of the shopping for the household, that "anything around the house is mine, and he used to be a co-partner in that, and ... he ... no longer thinks about it," Plaintiff does a minuscule amount of yardwork and has numb feet and bad knees. Additionally, she testified that he can not start or complete tasks, has memory problems and is less tolerant and impatient. (Tr. 688-689).

### 3. The ALJ Fully Considered The Information Provided in Plaintiff's Wife's Testimony

The Court finds that the ALJ gave full consideration to the information provided in Plaintiff's wife's statement. However, the Court's review of her testimony shows that either her testimony conflicts with her statement in one minor regard, and that the remainder of the information contained in her testimony was consistent with her statement.

#### a. Conflict Between Statement and Testimony

Plaintiff's wife's statement notes that Plaintiff might complete household errands and shops for groceries and household supplies two to three times per week. (Tr. 132, 134-136). However she testified that she does 90% of the shopping. (Tr. 688). In this regard, her testimony conflicts with her statement. The Court finds that this conflict is minor, at best. Therefore, the ALJ reasonably noted that Plaintiff was able to do some shopping. (Tr. 22).

#### b. Consistencies Between Statement and Testimony

Plaintiff's wife's testimony and statement are consistent in every other respect.  Plaintiff's wife testified that Plaintiff is

less tolerant and impatient. (Tr. 688). These observations are included in her statement. (Tr. 137). She testified that Plaintiff has memory problems regarding taking his medications. (Tr. 688). This observation is included in her statement. (Tr. 134). She testified that Plaintiff does a minuscule amount of yard work. (Tr. 689). This observation is included in her statement. (Tr. 135-136). She testified that Plaintiff has numb feet and bad knees. (Tr. 689). These observations are in her statement. (Tr. 135, 139). She testified that Plaintiff can not start or complete tasks and has memory problems. (Tr. 688-689). These observations are included in her statement. (Tr. 134). Therefore, the Court concludes that Plaintiff's wife's statement and her testimony are essentially consistent. Consequently, the ALJ did not need to mention her testimony in his decision because the statement and testimony contain the same information. In fact, the Court observes that her statement is more expansive than her testimony because her statement provides more information about Plaintiff's activities and her observations of his limitations than does her testimony.

### c. The ALJ Fully Considered the Presented Medical Evidence

Social Security Ruling 88-13 requires that where a claimant's allegations of symptoms are not supported by medical evidence in the file, the ALJ must fully consider the evidence offered by lay witnesses. But, the ALJ may discount such evidence if it conflicts with the presented medical evidence. Smolen, 80 F.3d at 1288; Lewis, 236 F.3d at 511.

Here, it is clear that the record is replete with medical evidence detailing Plaintiff's conditions and limitations. The ALJ accorded greater weight to the objective medical evidence because it

conflicted with Plaintiff's wife's statement and testimony. In so doing, the ALJ specifically noted Plaintiff's own reported activities during the time he claimed he was disabled, his medical records regarding his cardiovascular and psychological conditions, and his musculoskeletal impairments. Further, he reviewed the reports of Dr. Rodriguez, a consultive examining psychiatrist, Dr. Lee, a board certified internist, and Dr. Steiner, a consultive examining internist, who is certified in cardiovascular disease. (Tr. 21-22). The records and reports noted above do not indicate that Plaintiff's conditions and limitations are as severe as the information contained in Plaintiff's wife's statement and testimony.

Therefore, the Court concludes that the ALJ did not err in not mentioning Plaintiff's wife's testimony, but instead accorded greater weight to the objective medical evidence presented to him. As a result, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

VI

CONCLUSION AND RECOMMENDATION

After a review of the record in this matter, the undersigned Magistrate Judge RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than August 20, 2010, any party to this action may file written objections with the Court and serve

a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than September 7, 2010. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 29, 2010

                                        Hon. William V. Gallo
                                        U.S. Magistrate Judge